**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MELODY JOHNSON                                    *
                                                  *
    16090 O-Bannon Dr.                          *
    Raeford, NC 28376                           *
                                                  *
                                                  *
    Plaintiff,                                  *
                                                  *
                                                  *
v.                                                *    Case No.
                                                  *
MEDTRONIC, INC.                                   *
                                                  *
    710 Medtronic Parkway NE,                   *
    Minneapolis, MN 55432-5604                  *
                                                  *
                                                  *
    Defendant.                                  *
                                                  *
                                                  *

**COMPLAINT**

**I. INTRODUCTION**

1.      This is a proceeding for strict liability, negligence, breach of implied warranty,

breach of express warranty, negligent infliction of emotional distress, and for equitable

relief all in connection with Defendant's sale, distribution, design and/ or manufacture of

defective cardioverter-defibrillators.

## II.  JURISDICTION AND VENUE

2.    This Court has jurisdiction over this controversy and over the parties to this action.

3.    Pursuant to 28 U.S.C. §1332, the amount in controversy in this matter exceeds $75,000.00 exclusive of interests and costs.

4.    Venue is proper under 28 U.S.C. §1391(a) because a significant portion of the material event giving rise to this action occurred in the District of Columbia.

## III.  PARTIES

5.    Plaintiff, Melody Johnson, (hereinafter, "Plaintiff") is a resident of Raeford, North Carolina.  On or about, September 26, 2001, Plaintiff was implanted with a Medtronic Gem III, VR defibrillator in the District of Columbia.

6.    Defendant, Medtronic, Inc. (hereinafter, "Defendant") is a large publicly held Minnesota corporation with its principal place of business in Minneapolis, Minnesota. Defendant Medtronic designs, manufacturer and markets implantable medical defibrillators and other products for cardiovascular patients worldwide.  Defendant at all times relevant to the claims in this action, designed, and/ or manufactured and/ or supplied and/ or distributed and/ or sold and/ or otherwise placed into the stream of worldwide trade defibrillators.

## IV. STATEMENT OF FACTS

7.     Implantable cardioverter-defibrillators are implantable devices that treat rapid, life-threatening heart rhythm disturbances originating in the lower chambers of the heart that can lead to sudden cardiac arrest.

8.     Defibrillators deliver an extremely powerful high energy electric shock of around seven hundred volts in order to interrupt an irregular rhythm and restore a heart to a proper rhythm when irregularities occur.

9.     Devices called pacing leads carry the electrical pulses to the heart from the defibrillator.

10.     On or about, September 26, 2001, Plaintiff was implanted with a Medtronic Gem III VR defibrillator, Model 7231CX and 694558, at the Washington Hospital Center in Washington, DC.

11.     In the early morning of Thanksgiving Thursday, on November 25, 2004, Plaintiff was violently awakened by several shocks from her defibrillator.  Plaintiff was taken by ambulance to the Prince Georges' County Hospital in Cheverly, Maryland.

12.     At the hospital it was determined that Plaintiff's defibrillator had a high voltage lead fracture and that it was misfiring.

13.     From the time Plaintiff awoke to her arrival at the hospital Plaintiff experienced multiple misfired shocks to her heart.

14.     At the hospital it was determined that the battery voltage of Plaintiff's defibrillator was "very small" and that Plaintiff's defibrillator needed to be replaced.

15.    On November 26, 2004, Plaintiff underwent surgery to replace the malfunctioning

lead and was upgraded to a dual chamber defibrillator less likely to mal-sense.

16.    On February 11, 2005, Defendant issued a press release stating that it was

advising physicians about a potential battery shortening mechanism that may occur in

some of its defibrillators.

17.    Defendant has since recalled several numerous models of its defibrillators due to

rapid battery depletion.

18.    Plaintiff's defibrillator was also defective.

19.    As a direct and proximate result of Defendant's wrongful actions in placing a

defective product into the stream of commerce, Plaintiff has suffered and will continue to

suffer, pain, disability, medical expenses, lost wages, possible death, severe injury,

mental anguish, disability and other injuries and/ or damages and such injuries and/ or

damages will continue to occur in the future.


### CAUSES OF ACTION V.

COUNT I.

STRICT LIABILITY

20.    Plaintiff repeats and re-alleges ach and every allegation contained in paragraphs 1

through 19 of this Complaint with the same force and effect as if set forth herein.

21.    At all times material, Defendant designed, manufactured, marketed and sold

defective defibrillators and placed defective defibrillators in the stream of commerce.

22.    Defendant has profited from the sale of defibrillators.

Defendant designed, manufactured, and sold defibrillators for the intended and

express purpose of implanting the defibrillators in patents suffering from an existing heart condition.

23.     Defendant intended the defibrillators to continuously and reliably treat rapid life-threatening heart rhythm disturbances originating in the lower chambers of the heart that can lead to sudden cardiac arrest and to treat heart failure and life-threatening heart rhythm disturbances.

24.     The defibrillators are defective and/ or unfit for their intended purposes.

25.     The defective defibrillators were in an unreasonable dangerous condition when they were placed into the stream of commerce by Defendant.

26.     Plaintiff was implanted with a defective defibrillator which was in the same condition or substantially similar condition as when it left Defendant.

27.     Plaintiff has been damaged by a defective defibrillator in that the defibrillator was placed within Plaintiff's body, and that Plaintiff has also been required to undergo additional surgery to replace the defective defibrillator.

28.     Plaintiff has been injured and has incurred damages, including, but not limited to, permanent physical injuries to her person, medical expenses, disability, loss of use of the body, physical and mental pain and suffering.

29.     Plaintiff will incur future medical expenses, permanent disability, loss of use of the body, physical, and mental pain and suffering, and loss of enjoyment of life.

30.     The product defect and/ or unfitness described above are the direct and proximate cause of the injuries Plaintiff suffered and will suffer in the future.

COUNT II.

BREACH OF IMPLIED WARRANTY

31.     Plaintiff repeats and re-alleges ach and every allegation contained in paragraphs 1 through 30 of this Complaint with the same force and effect as if set forth herein.

32.     Defendant is in the business of designing, manufacturing, and distributing defibrillators such as the one implanted in Plaintiff.

33.     By placing the defibrillator into the stream of commerce, Defendant implied and therefore warranted that the defibrillator was fit and safe for its intended purpose of continuously and reliably treating rapid, life-threatening heart rhythm disturbances originating in the lower chamber of the heart which can lead to sudden cardiac arrest, and treating heart failure and life threatening heart rhythm disturbance.

34.     Defibrillators placed into the stream of commerce by Defendant are defective and/ or unfit for their intended purpose because the defibrillators are equipped with a battery which may experience rapid battery depletion.

35.     The defect in Plaintiff's defibrillator was present at the time the defibrillator was in the hands of Defendant.

36.     Defendant breached its implied warranty that the defibrillator was fit and safe for its intended purpose by placing defective, unmerchantable and unfit defibrillators into the stream of commerce such that the defibrillator was ultimately implanted in Plaintiff.

37.     Plaintiff was a foreseeable user of the defibrillator.

38.    Plaintiff was and is subject to risk of possible death, and substantial harm, injury, and damage as a direct and proximate result of Defendant's breach of implied warranties described herein.

COUNT III.

BREACH OF EXPRESS WARRANTY

39.    Plaintiff repeats and re-alleges ach and every allegation contained in paragraphs 1 through 38 of this Complaint with the same force and effect as if set forth herein.

40.    Defendant expressly warranted to Plaintiff that the defibrillator designed, developed, manufactured and sold by Defendant was of merchantable quality, fit and safe and otherwise not injurious to Plaintiff's health and well-being.

41.    The defibrillator implanted in Plaintiff was unsafe, unmerchantable, unfit for the purpose for which it was intended, and otherwise injurious to Plaintiff.

42.    Defendant breached express warranties of merchantability in the sale of its defibrillator to Plaintiff in that the defibrillator was and is not fit for its ordinary intended purpose.

43.    Plaintiff was and is subject to risk of possible death, substantial harm, injury and damage as a direct and proximate result of Defendant's breach of express warranties as described herein.

COUNT IV.

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

44.     Plaintiff repeats and re-alleges ach and every allegation contained in paragraphs 1 through 43 of this Complaint with the same force and effect as if set forth herein.

45.     Defendant placed into the stream of commerce defective defibrillators with actual and/ or constructive knowledge that the defibrillators were not fit for their intended purposes and with actual and/ or constructive knowledge that the defibrillators would cause the attendant medical problems described herein.

46.     Defendant knew or should have known that the defects in its medical defibrillator would cause Plaintiff to suffer psychological trauma due to increased risk of death, bodily injuries and financial harm.

47.     Plaintiff has suffered and will continue to suffer bodily injury, mental anguish, anxiety and fear as a result of Defendant's wrongful conduct.

48.     Defendant is directly and proximately liable for the injuries suffered by Plaintiff resulting from the emotional distress caused by the failure of the defibrillator implanted into Plaintiff and the resulting re-implantation.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays this Court:

(a)      Award the legal and equitable relief requested above, and any other such

legal and/ or equitable relief that the Court may deem appropriate;

(b)      Award Plaintiff reasonable attorneys' fees and costs;

(c)      Order any other relief this Court deems to be just and appropriate.

## VII. JURY DEMAND

Plaintiff herein demands trial by jury of all issues in this action.

Respectfully Submitted,

_____
E. Gregory Watson
(DC Fed Bar. #MD14398)

_____
Stephanie D. Moran
(DC Fed Bar. #MD14259)

Watson & Moran, LLC
Metro-Plex I
8401 Corporate Drive
Suite 110
Landover, Maryland 20785
(301) 429-0505 ph.
(301) 429-0371 fax.